## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **Anatoly Mikhailovich Karachinskiy** ) | |
|      7, Ave. Princesse Grace ) | |
|      Monaco, 98000 ) | |
| ) | |
|                        *Plaintiff,* ) | |
| ) | CASE. NO. 22-cv-3699 |
|                   v. ) | |
| ) | **COMPLAINT FOR** |
| **ANTONY J. BLINKEN** ) | **DECLARATORY AND** |
| **In his official capacity as** ) | **INJUNCTIVE RELIEF** |
|      **Secretary of the United States** ) | |
|      **Department of State** ) | |
|      2201 C St., NW ) | |
|      Washington, D.C. 20037 ) | |
| ) | |
|      and ) | |
| ) | |
| **THE UNITED STATES DEPARTMENT** ) | |
| **OF STATE** ) | |
|      2201 C Street, NW ) | |
|      Washington, D.C. 20037 ) | |
| ) | |
|      and ) | |
| ) | |
| **JIM MULLINAX,** ) | |
| **in his official capacity as** ) | |
|      Director of the ) | |
|      United States Department of State ) | |
|      Bureau of Economic and Business Affairs ) | |
|      Office of Economic Sanctions Policy ) | |
|      & Implementation ) | |
|      2201 C St., NW ) | |
|      Suite #4657 ) | |
|      Washington, D.C. 20037 ) | |
| ) | |
|      and ) | |
| ) | |
| **THE UNITED STATES DEPARTMENT** ) | |
| **OF STATE, OFFICE OF ECONOMIC** ) | |
| **SANCTIONS POLICY** ) | |
| **AND IMPLEMENTATION** ) | |

|  |  |
|---|---|
| 2201 C Street, NW | ) |
| Suite #4657 | ) |
| Washington, D.C. 20037 | ) |
|  | ) |
| and | ) |
|  | ) |
| **JANET YELLEN** | ) |
| **in her official capacity as** | ) |
| **Secretary of the United States** | ) |
| **Department of the Treasury** | ) |
| 1500 Pennsylvania Ave., NW | ) |
| Washington, D.C. 20220 | ) |
|  | ) |
| and | ) |
|  | ) |
| **THE UNITED STATES DEPARTMENT OF** | ) |
| **THE TREASURY** | ) |
| 1500 Pennsylvania Ave., NW | ) |
| Washington, D.C. 20220 | ) |
|  | ) |
| and | ) |
|  | ) |
| **ANDREA M. GACKI** | ) |
| **in her official capacity as** | ) |
| **Director of the** | ) |
| **United States Department of the Treasury** | ) |
| **Office of Foreign Assets Control** | ) |
| 1500 Pennsylvania Avenue, NW | ) |
| Freedman's Bank Building | ) |
| Washington, D.C. 20220 | ) |
|  | ) |
| and | ) |
|  | ) |
| **THE UNITED STATES DEPARTMENT** | ) |
| **OF THE TREASURY, OFFICE OF FOREIGN** | ) |
| **ASSETS CONTROL** | ) |
| 1500 Pennsylvania Avenue, NW | ) |
| Freedman's Bank Building | ) |
| Washington, D.C. 20220 | ) |
|  | ) |
|  | ) |
| *Defendants.* | ) |
|  | ) |

2

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiff Anatoly Karachinskiy (herein referred to as "Plaintiff") brings this Complaint for Declaratory and Injunctive Relief against Defendants the United States Department of State, its Secretary, Antony J. Blinken, the United States Department of State's Office of Economic Sanctions Policy & Implementation, and Jim Mullinax, its Director of the Office of Economic Sanctions Policy & Implementation, along with the United States Department of the Treasury, its Secretary, Janet Yellen, the United States Department of the Treasury's Office of Foreign Assets Control ("OFAC"), and its director, Andrea Gacki (collectively, the "Defendants") and in support of his complaint alleges:

### INTRODUCTION

1.      This lawsuit arises from Defendants' continued and unlawful failure to adjudicate Anatoly Karachinskiy's (Plaintiff's) request to rescind his designation as a Specially Designated National ("SDN") under Executive Order ("E.O.") 14024 of April 15, 2021, and to remove his name from the Specially Designated Nationals and Blocked Persons List (the "SDN List").

2.      In support of his complaint, Plaintiff asserts three claims.  First, that the Defendants, jointly and severally, are impermissibly departing from lawful procedure in considering and adjudicating the Plaintiff's delisting petition and, thus, are acting arbitrarily and capriciously.  In support of his first argument, Plaintiff alleges: a) that the Defendant, U.S. Secretary of the Treasury, Janet Yellen, has no authority to delegate to the U.S. Department of State authorities granted to her by the President under relevant agency regulations, E.O. 14024, the International Emergency Economic Powers Act ("IEEPA"), or otherwise; b) that the Defendant, OFAC, has no authority to delegate its adjudication authority to Defendant U.S. Department of State ("State") under relevant agency regulations, E.O. 14024, IEEPA, or otherwise; and c) that the Defendant, State, has no

lawful authority to adjudicate this matter under the relevant agency regulations, E.O. 14024, IEEPA, or otherwise.  Second, that the Defendants are acting arbitrarily and capriciously by treating Plaintiff differently than similarly situated petitioners under the same administrative process and unreasonably delaying adjudication of Plaintiff's petition for removal from the SDN List.  And third, that there was no factual or legal basis to include Plaintiff's name on the SDN List based on information reasonably available to Defendants at the time of his designation, and— in the alternative—that there is no factual or legal basis upon which Defendants could reasonably determine that Plaintiff should remain on the SDN List.

3.      In the United States, it is not a crime for someone to be of Russian descent, nor is there a legitimate basis to impose economic sanctions on someone simply for being Russian. Recognizing the emergency that Russia's unwarranted and unprovoked invasion of Ukraine represents, it is still incumbent on our governmental representatives to follow the law and act accordingly.

4.      In this case, Mr. Anatoly Karachinskiy is being punished for his status as a dual Canadian and Russian citizen who has lived outside of Russia since 2014.  Notwithstanding that Plaintiff immediately resigned from a largely ceremonial position as an independent member of the supervisory board of a Russian bank following the invasion of Ukraine and that bank's designation as an SDN, Plaintiff was nevertheless designated as an SDN 50 days later.  Plaintiff held that position for a mere eight months prior to his resignation.  Mr. Karachinskiy has no ties to the government of the Russian Federation; he is neither a U.S. adversary, nor a national security or foreign policy concern.  He is, instead, collateral damage.

5.      As a matter of right, the Defendants must afford Plaintiff the process to which he is due and equal protection under the law. The moment that State took agency action against

4

Plaintiff, certain legal protections attached to Defendants' actions by way of the Administrative Procedure Act ("APA") and the U.S. Constitution.  For instance, Defendants may not, *inter alia*, exceed their statutory authority or act outside the procedure required by law.  Further, Defendants may not act arbitrarily and capriciously through the adjudication process or otherwise act in discordance with the law.  In addition, Defendants must provide for due process and equal protection to ensure that persons affected by their actions have a meaningful opportunity to respond to them, and that similarly situated parties are treated in a similar manner.  In unnecessarily delaying adjudication of this matter—and acting without lawful authority—Defendants are taking agency action through their failure to act, and thereby depriving Plaintiff of his rights to due process and equal protection under the U.S. Constitution.

6.     A fundamental principle undergirding due process and equal protection is that federal agencies must follow their own rules and treat similarly situated parties in a similar manner. In this case, the Court is faced with a somewhat novel issue: a federal agency that is acting outside of any rules whatsoever.  Nowhere in the law—be it statutory, regulatory, or administrative—is the U.S. Department of State authorized to adjudicate a delisting petition for removal from the SDN List.  The rules governing the process for administrative reconsideration exclusively identify the U.S. Department of the Treasury's Office of Foreign Assets Control (OFAC) as the sole administrative body that adjudicates such petitions.  Further, there is no delegation authority granted by the President as part of the sanctions program issued under E.O. 14024 for the Secretary of the Treasury to redelegate her functions outside of Treasury.  Since the operative laws and regulations specify the governmental actors who are empowered to conduct certain actions, there is no implied delegation to State to adjudicate Plaintiff's petition for administrative reconsideration.

7.      State has designation authority to impose sanctions on individuals and entities within the authority granted by the President in E.O. 14024 at Section 1(a).  However, E.O. 14024 and its underlying regulations at 31 C.F.R. Part 587 (the Russian Harmful Foreign Activities Sanctions Regulations or "RuHSR") do not otherwise contemplate State's involvement in the administration of sanctions, including, *inter alia*, considering specific license applications, procedures governing delisting petitions, or adjudicating petitions for reconsideration of a sanctions designation—such as Plaintiff's petition.

8.      Thus, as a question of law, the U.S. Department of State has no legal authority to adjudicate the instant petition for reconsideration.  E.O. 14024 states that "[t]he Secretary of the Treasury, in <u>consultation</u> with the Secretary of State is hereby authorized to take such actions, including the promulgation of rules and regulations, and to employ all powers granted to the President by IEEPA, as may be necessary to carry out the purposes of this order [E.O. 14024]."  (E.O. 14024 at Section 8, emphasis added).  In plain language, the State Department is authorized to play a consultation role, not an administrative or adjudicative role.  Further, E.O. 14024 states that "[t]he Secretary of the Treasury may, consistent with applicable law, redelegate any of the functions <u>within the Department of the Treasury</u>."  (E.O. 14024 at Section 8, emphasis added).  Elsewhere in the U.S. Code, the Secretary of the Treasury is authorized at 31 U.S.C. § 321(b)(2) to "delegate duties and powers of the Secretary to another officer or employee of the Department of the Treasury[.]"

9.      The Department of State and the Department of the Treasury are wholly separate government departments.  Thus, they are imbued by law with separate authorities.  Each governmental actor must be empowered to act according to law, including in administrative decisions.  The Secretary of State—and those acting under his name—do not have authority to

assume administrative powers that the law does not confer, and that are specifically provided to the Department of the Treasury. The U.S. Department of State cannot arbitrarily assume authorities granted by the President to the Secretary of the Treasury.  Concurrently, the Secretary of the Treasury cannot arbitrarily outsource her authorities to a wholly separate government department.

10.     In other sanctions programs, by contrast, the operative executive order provides discretion for the Secretary of the Treasury to redelegate her functions to other officers and agencies of the United States government, consistent with applicable law.  For example, Executive Order 13413 of October 27, 2006—which, like E.O. 14024, was issued pursuant to IEEPA—contains such delegation authority at Section 5: "[t]he Secretary of the Treasury may redelegate any of these functions to *other officers and agencies of the United States Government*[.]" (E.O. 13413 at Section 5, emphasis added).  However, E.O. 14024 contains no such language.  The authorities exercised by the Secretary of the Treasury may only be redelegated *within Treasury*, not to the U.S. Department of State's Office of Economic Sanctions Policy & Implementation.

11.     In addition to E.O. 14024, the underlying regulations at 31 C.F.R. Parts 501 and 587 likewise fail to provide State with legal authority to adjudicate a petition for reconsideration of a sanctions designation action.  That authority and, indeed, the entire adjudication process resides with OFAC, as set forth in the Reporting, Procedures, and Penalties Regulations found at 31 C.F.R. Part 501.  As stated at 31 C.F.R. 501.807, "[a] person may seek administrative reconsideration of his, her or its designation … [t]his submission must be made in writing and addressed to the Director, Office of Foreign Assets Control."  Of note, the regulations found at 31 C.F.R. 501 and 587 are Department of the Treasury regulations—not State regulations.  State has not promulgated *any* regulations regarding the adjudication of administrative petitions for reconsideration.

12.     State's assumption of the adjudication process in this matter is an impermissible *ad hoc* departure from the lawful reconsideration process that is codified in the applicable regulations. Thus, State finds itself with no lawful authority to adjudicate this matter, yet is still acting as the adjudicative agency considering Plaintiff's petition for reconsideration—and failing to take any action on it.  It is arbitrary and capricious that State should assume the administrative authority to determine whether Plaintiff should be removed from the SDN List, and then fail to act on it.  Thus, Plaintiff is deprived of his right to have his matter adjudicated by an administrative body that has lawful authority to do so.  Instead, Plaintiff is forced into an *ad hoc* process with an agency that is neither authorized nor competent to adjudicate this matter.

13.     *Arguendo* that State does possess such lawful authority to adjudicate this matter, it is likewise anathema to U.S. law and basic Constitutional principles of fairness that Defendants should make a decision through their failure to act.  Indeed, Plaintiff has identified three other petitioners whose matters were adjudicated in less time than Plaintiff's petition for reconsideration. To wit, those three petitioners are Ozon Bank, Alfa-Bank Kazakhstan, and Limited Liability Company Active Business Consult; all three parties were designated under E.O. 14024, just as Plaintiff—and likewise petitioned for reconsideration.  Their petitions for reconsideration were adjudicated—and those parties' names were removed from the SDN List—in far less time than the Defendants have considered Plaintiff's petition for removal.  Of note—and as previously described herein—there are no separate regulations by which State may consider an administrative petition for reconsideration.  Thus, Plaintiff petitioned for administrative reconsideration of his SDN designation pursuant to OFAC's regulations at 31 C.F.R. § 501.807 because there are no other regulations defining the process for administrative reconsideration of an SDN designation. Therefore, if State is authorized to adjudicate this matter under 31 C.F.R. § 501.807, State is

equally bound to treat similarly situated parties similarly pursuant to the same administrative process.  As a similarly situated party, Defendants must adjudicate Plaintiff's matter in a similar manner as those other petitioners—or provide a legitimate reason as to why they are treating Plaintiff differently.  Instead, Defendants have provided no substantive response to Plaintiff's numerous requests for timely adjudication, despite Plaintiff answering all of State's questions in two separate questionnaires and otherwise fully cooperating in this matter.

14.     The impermissibility of Defendants' failure comes into sharp relief when considering the simplicity of the factual basis underlying Plaintiff's designation.  Indeed, Plaintiff was designated for being a member of the supervisory board for Bank Otkritie, even though Plaintiff resigned from the position giving rise to State's designation 50 days prior to his designation, and immediately after Bank Otkritie was put on the SDN List.  Further, as part of his petition for reconsideration, Plaintiff has provided a robust production of original documentation and third-party corroboration of his proven claim that he was not a supervisory board member at the time of his designation and is no longer a supervisory board member.  There is an irrefutable record that Plaintiff no longer serves in *any* capacity for Bank Otkritie, thus negating the predicate basis for his designation by State.  This is a statement of fact that can be—and has been—verified through third-party sources in addition to the original documents that Plaintiff provided Defendants as part of his petition.

15.     The Defendants had—*or could have reasonably obtained*—verification through independent third-party business reporting that Plaintiff had already resigned his position from Bank Otkritie *before* his designation, thus invalidating the basis for his inclusion on the SDN List at the time of State's action.  *Arguendo* that State appropriately designated Plaintiff in the first instance, Defendants have been presented with irrefutable evidence that Plaintiff resigned from the

supervisory board of Bank Otkritie before Plaintiff's designation on April 20, 2022.  Nevertheless, Defendants still refuse to adjudicate his petition for removal.  Defendants have had such information negating the basis for Plaintiff's designation in their possession since at least May 6, 2022, with further independent corroboration provided by Plaintiff—at the direct request of Defendant State—as of June 29, 2022, months before Plaintiff was forced to defend his rights before this Court.

16.    This honorable Court must not allow a government agency to blind itself to what is plainly before them, while impermissibly departing from appropriate procedure as prescribed by law.  Similarly situated parties have presented such information negating a basis for designation under E.O. 14024, and their petitions for removal have been swiftly adjudicated in less time than Plaintiff's petition has been submitted, and—thus far—not considered, nor acted upon.  Plaintiff is lawfully afforded at least the same consideration as these other similarly situated parties.

17.    An agency's failure to act is an agency action, and Defendants are affirmatively making a decision through their inaction.  However, the law in this Circuit and Constitutional considerations of due process and equal protection compel Defendants to treat similarly situated parties in a similar manner.  Defendants have ample information to adjudicate this matter.  Plaintiff has submitted irrefutable evidence that he was not a member of the supervisory board of Bank Otkritie at the time of his designation, and is no longer on the supervisory board of Bank Otkritie.  Thus, Defendants must render a decision in this matter.

18.    Defendants' actions have caused, and continue to cause, Plaintiff significant personal and financial harm, despite the lack of any legal basis for Defendants to maintain his designation as an SDN.  Foreign banks have blocked or otherwise restricted Plaintiff's accounts without force of law; he is having severe difficulty in paying for his living expenses in his home

country; and he cannot otherwise participate in any meaningful economic activity owing to his designation. Further, Plaintiff's reputation is permanently stained because of State's arbitrary designation 50 days after Plaintiff resigned from the supervisory board of Bank Otkritie. Plaintiff will continue to suffer those harms so long as Defendants' unreasonable delay in adjudicating Plaintiff's delisting petition is permitted to continue unabated. Accordingly, Plaintiff turns to this Court for relief.

## JURISDICTION AND VENUE

19.   This action arises under the United States Constitution, the International Emergency Economic Powers Act, 50 U.S.C. § 1701 *et seq*., and the Administrative Procedure Act, 5 U.S.C. §§ 555 and 701 *et seq*. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this action arises under the laws of the United States.

20.   This Court may grant declaratory relief pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq*., and Fed. R. Civ. P. Rule 57. This Court may grant injunctive relief pursuant to Fed. R. Civ. P. Rule 65.

21.   Venue is proper in the District of Columbia as this is the district in which the events giving rise to the complaint occurred and in which Defendants reside. *See* 28 U.S.C. §§ 1391(b) and (e).

## THE PARTIES

22.   Plaintiff Mr. Anatoly Karachinskiy is and was at all relevant times a citizen of Canada and the Russian Federation. He has lived outside of the Russian Federation since 2014 and currently resides in Monaco. Plaintiff is the founder of a public international U.S.-traded company, Luxoft. Luxoft was listed on the New York Stock Exchange from 2013 to 2019, when DXC Technology (NYSE: DXC), an American company based in Ashburn, Virginia, acquired

Luxoft.  Mr. Karachinskiy's former company held contracts with the U.S. Department of Energy, John Deere, Dell, Boeing, AT&T, Microsoft, IBM, Intel, AMD, Expedia, Citibank, Caterpillar, Ford, and other U.S. companies.  Further, Mr. Karachinskiy's former company worked in partnership with the U.S. government to prevent nuclear expertise from flowing into Iran and North Korea.  Indeed, a joint American-Russian program sponsored by the U.S. Department of Energy—and performed by Mr. Karachinskiy's former company—trained Russian nuclear scientists to use their expertise to produce commercial software with the stated goal of creating permanent civilian jobs, and thus preventing hostile actors from obtaining their nuclear expertise (*see, e.g.*, RAND National Security Research Division, "Engaging Russia as Partner and Participant" at https://apps.dtic.mil/sti/pdfs/ADA429912.pdf at p. 61).  Additionally, Mr. Karachinskiy was one of the leading employers and investors in Ukraine.  In 17 years, his company spent approximately $2.5 billion U.S. dollars in Ukraine and, as of 2019, employed approximately 6,500 Ukrainian information technology (IT) specialists, representing 35% of his former company's total workforce.  To this day, the company he sold pays approximately $30 million U.S. dollars in salary *every month* to thousands of Ukrainian IT specialists currently living in Ukraine. Mr. Karachinskiy is now retired and devotes his time to supporting small businesses, most notably those located in Ukraine.  Mr. Karachinskiy has invested in and supported the Ukrainian people throughout his entire professional life; he is firmly against Russia's invasion of Ukraine.

23.     On April 20, 2022, Plaintiff was designated by the U.S. Department of State pursuant to E.O. 14024 and his name was included on the SDN List maintained and administered by OFAC.

24.     Defendant, the U.S. Department of State, is a cabinet-level governmental department, led by the Secretary of State, that manages the U.S.'s relationships with foreign

governments, international organizations, and the people of other countries.  It is located at 2201 C St., NW, Washington, D.C. 20037.

25.     Defendant, Antony Blinken, is the Secretary of the U.S. Department of State.  Mr. Blinken is sued in his official capacity.

26.     Defendant, the Bureau of Economic and Business Affairs, Office of Economic Sanctions Policy & Implementation, is a federal agency that is part of the U.S. Department of State. It is located at 2201 C St., NW, Suite #4657, Washington, D.C. 20037.

27.     Defendant Jim Mullinax is the Director of the Office of Economic Sanctions Policy & Implementation. In this role, Mr. Mullinax is responsible for overseeing and directing the operations of the Office of Economic Sanctions Policy & Implementation, which has no lawful authority to adjudicate this matter and is unreasonably delaying adjudication of Plaintiff's delisting petition.  Mr. Mullinax is sued in his official capacity.

28.     Defendant OFAC is a federal administrative agency of the U.S. Department of the Treasury and is located at 1500 Pennsylvania Ave., NW, Freedman's Bank Building, Washington D.C. 20220.  Defendant U.S. Department of the Treasury is responsible for maintaining the financial and economic security of the United States.  The Department of the Treasury is also responsible for overseeing various offices, including OFAC.  Plaintiff understands that OFAC is lawfully responsible for administering U.S. economic sanctions programs, including by designating persons under E.O. 14024 and regulating dealings with them under those authorities— along with serving as the sole administrative agency responsible for the reconsideration and delisting process—via 31 C.F.R. Parts 501 and 587, the "Reporting, Procedures and Penalties Regulations" and the "Russian Harmful Foreign Activities Sanctions Regulations," respectively.

29.     Defendant Janet Yellen is the Secretary of the Treasury of the United States.  Ms. Yellin is sued in her official capacity.

30.     Defendant Andrea M. Gacki is the Director of OFAC.  Ms. Gacki is sued in her official capacity.

## FACTUAL ALLEGATIONS

*A.     State Designates Plaintiff as a Specially Designated National*

31.     Plaintiff was initially designated by State on April 20, 2022 for being or having been a leader, official, senior executive officer, or member of a board of directors, or member of an entity whose property and interest in property are blocked under E.O. 14024.  Based on the factual allegations in State's press release, State alleged that Plaintiff is a member of the Board of Directors of Bank Otkritie.  State specifically cited Section 1(a)(iii)(C) as providing legal authority for its action.  At the time of State's designation, State could not accurately claim that Plaintiff was still a member of Bank Otkritie's supervisory board.

32.     Plaintiff immediately submitted a petition for the reconsideration of his designation to OFAC—as prescribed by law—on the date of his designation (April 20, 2022).  Plaintiff received acknowledgment of his petition from OFAC the following day, April 21, 2022.  OFAC indicated in later correspondence to counsel that it opened petition file RUSSIA-EO14024-26535 based on Plaintiff's direct request.

*B.     Plaintiff's Challenge to his State Designation*

33.     On May 6, 2022, Plaintiff submitted an updated petition for reconsideration through counsel to both OFAC and State, noting that a similarly situated petitioner had their petition for removal adjudicated within 35 days of submission.  Defendant OFAC Director Andrea Gacki was included on the submission, along with her Deputy Director and the OFAC Associate Director for

Global Targeting—the specific office at OFAC responsible for designating individuals and adjudicating petitions for reconsideration.  While OFAC did not use its own designation authorities to impose blocking sanctions on Plaintiff, OFAC is the sole agency identified in the "Procedures governing delisting from the Specially Designated Nationals and Blocked Persons List" at 31 C.F.R. § 501.807 to consider and adjudicate delisting petitions.  Further, pursuant to E.O. 14024, the Secretary of the Treasury may only redelegate the authorities under her purview within the Department of the Treasury. (Exec. Order 14024 of April 15, 2021, at Section 8).

34.     Nevertheless, State officials (with OFAC representatives copied) began corresponding with Plaintiff (through undersigned counsel) as part of the process for reconsideration; in all communications referenced herein, representatives from OFAC were fully apprised of the matter and copied on all correspondence.  At any point, OFAC and its representatives could have asserted their lawful authority to adjudicate Plaintiff's petition; instead, they have remained silent during this process.  On May 31, 2022, Plaintiff again indicated to Defendants that he was similarly situated as another E.O. 14024 petitioner whose petition was adjudicated within 35 days: to wit, Ozon Bank.  Plaintiff further noted that under binding case law in this Circuit, agencies must treat similarly situated parties similarly, unless they can provide a legitimate reason as to why they are being treated differently.  In support of this legal conclusion, Plaintiff cited *Kreis v. Sec'y of Air Force*, 406 F.3d 684, 687 (D.C. Cir. 2005) (*quoting Indep. Petroleum Ass'n of Am. v. Babbitt*, 92 F.3d 1248, 1258 (D.C. Cir. 1996)).

35.     On June 10, 2022—35 days after Plaintiff submitted his updated petition for reconsideration—the Deputy Director for State's Bureau of Economic and Business Affairs at the Office of Sanctions Policy & Implementation indicated that *State* would be sending questions to Plaintiff.  Copied on that correspondence was both the email address for OFAC's reconsideration

team and the OFAC Associate Director for Global Targeting.  Plaintiff received those questions from State on June 13, 2022 (the "First Questionnaire"); State requested responses to the First Questionnaire within 90 days of receipt.  The letter containing the questions came from a State email address, and not OFAC; the letter was written on official State letterhead and the signature block indicated that it came from Defendant, "U.S. Department of State Office of Economic Sanctions Policy and Implementation."  The letter indicated that Defendant, State's Office of Sanctions Policy and Implementation "is in the process of reviewing the petition" and "[f]or the Department of State to further evaluate the petition," Plaintiff must provide detailed narrative responses within 90 days.  The letter further stated that, "[i]f we [State] do not receive a response within 90 days, the *Department of State* will consider that [Plaintiff] does not wish to proceed with the petition and will *administratively close the case*" (emphasis added).   For an extension of time, the letter indicated that Plaintiff must "make that request to the Department of State in writing." OFAC was mentioned in the first paragraph as the governmental body that "maintained" the SDN List, not the governmental agency that administered sanctions or was solely responsible for adjudicating petitions for removal.  Nowhere else was OFAC mentioned in State's letter.  Plaintiff immediately acknowledged receipt of State's questions on June 13, 2022.

36.     Between June 28, 2022, and June 29, 2022 (i.e., in less than 20 days, as opposed to the requested 90 days), Plaintiff submitted detailed responses to all of State's questions with documentary evidence in support of his statements; State acknowledged receipt of the responses on June 29, 2022.   Further, Plaintiff submitted independent third-party confirmation that corroborated Plaintiff's documentary evidence that he had already resigned from the supervisory board of Bank Otkritie prior to State's designation action, thus negating the predicate basis for State's E.O. 14024 designation action.  Plaintiff, once again, requested that State adjudicate his

petition within 35 days of receipt of the questionnaire responses (on or before August 3, 2022) because he was similarly situated as other E.O. 14024 petitioners whose matters were resolved in that amount of time.  Plaintiff noted that under controlling D.C. Circuit precedent, State was obligated to treat similarly situated parties similarly, or provide a legitimate reason for its failure to do so.

37.     On July 18, 2022, and July 29, 2022, Plaintiff sent two additional messages to Defendants, further noting the approaching 35-day deadline.  In both messages, Plaintiff expressed his unequivocal willingness to cooperate with State and answer any remaining questions that the agency could pose.  Defendants did not substantively respond to either message.

38.     Plaintiff again contacted Defendants on August 3, 2022, noting that the 35 days had elapsed since Plaintiff submitted responses to State's questions, and again expressing full willingness to cooperate with the administrative process.  In the alternative, Plaintiff indicated that he would consider pursuing legal remedies.

39.     Since that time, Plaintiff has continued to engage with Defendants as part of the administrative process.  On August 17, 2022, Plaintiff cited two additional petitioners whose requests for reconsideration of their E.O. 14024 designation had been adjudicated within the same timeframe in which Plaintiff had submitted his request: to wit, Alfa-Bank Kazakhstan and Limited Liability Company Active Business Consult.  On August 24, 2022, Plaintiff again indicated his full willingness to cooperate with State as part of the administrative process.  Plaintiff further noted that he would be willing to meet with the U.S. government.  In the alternative—and again citing binding precedent in this Circuit—Plaintiff indicated that he would pursue legal remedies, owing to Defendants' failure to adjudicate Plaintiff's petition through the administrative process and Defendants treating Plaintiff differently than similarly situated petitioners.  Once again, Plaintiff

received no substantive response.  In fact, Plaintiff did not receive *any* response to his August 24th communication.

40.     Plaintiff sent yet another communication to Defendants on September 14, 2022.  In that communication, Plaintiff again reiterated his willingness to work with the U.S. government in resolving the matter through the administrative process.  In the alternative, Plaintiff communicated his desire to pursue legal remedies.

41.     On October 21, 2022, State finally replied by sending further questions (the "Second Questionnaire").  The format of the Second Questionnaire was identical to the First Questionnaire.  To wit, the letter containing the questions came from a State email address, and not OFAC; the letter was written on official State letterhead and the signature block indicated that it came from Defendant, "U.S. Department of State Office of Economic Sanctions Policy and Implementation."

42.     The questions in the Second Questionnaire did not bear on the underlying legal or factual basis of State's designation, nor did they appear to have any meaningful or tangential connection to whether the predicate basis of State's designation still applied to Plaintiff.  Instead, the Second Questionnaire included, *inter alia*, questions regarding Plaintiff's (undesignated) spouse and children who have never been alleged to have worked at Bank Otkritie, as well as a request for presumptively privileged communications between Plaintiff and his attorney.  Plaintiff noted in his response that he believed State was using the administrative reconsideration process and the Second Questionnaire as a pretext to inappropriately delay adjudication of Plaintiff's petition or, in the alternative, undertake a baseless fishing expedition to bolster State's insufficient administrative record, knowing that the original basis for designation is inadequate to keep Plaintiff on the SDN List.

43.     Nevertheless, in a spirit of good faith, cooperation, and transparency, Plaintiff responded to all of State's questions within two weeks, submitting detailed responses to each question on November 3, 2022.  Plaintiff renewed his request, once again, that State adjudicate the matter within 35 days (on or before December 8, 2022), as per controlling D.C. Circuit precedent. Those 35 days have now elapsed.  In total, Plaintiff has been designated by State for over 230 days—far longer than similarly situated parties whose matters have been adjudicated, and whose names have been removed from the SDN List in less time.

44.     OFAC has promulgated and administers regulations governing the procedures for seeking delisting from the SDN List.  Notably, and as previously described, none of those procedures involve the U.S. Department of State.  *See* 31 C.F.R. § 501.807, *Procedures Governing Delisting from the Specially Designated Nationals and Blocked Persons List*.  In relevant part, those procedures allow SDNs to "assert that the circumstances resulting in the designation no longer apply, and to….propose remedial measures…which the person believes would negate the basis for designation." *Id*.  Plaintiff has done both, even going so far as to propose measures to assure the U.S. government that he will continue not to serve in any capacity for Bank Otkritie as part of a terms of removal package and voluntarily submit to independent auditing and yearly certifications.  Nevertheless, Defendants have failed to adjudicate Plaintiff's petition for reconsideration.

45.     OFAC has provided guidance concerning removal from the OFAC SDN List. U.S. DEP'T OF THE TREASURY, Filing a Petition for Removal from an OFAC List, *available at* https://home.treasury.gov/policy-issues/financial-sanctions/specially-designated-nationals-list-sdn-list/filing-a-petition-for-removal-from-an-ofac-list/. This guidance states that "the ultimate goal of sanctions is not to punish, but to bring about a positive change in behavior." *Id*. The

guidance also offers examples of situations in which a delisting might be warranted, including "a positive change in behavior…" or when "the basis of designation no longer exists…" *Id*. Importantly OFAC's Associate Director for Global Targeting publicly stated as recently as April 2022 that sanctions are used judiciously to "ensure the integrity of sanctions, to not harm the innocent, and to ensure that sanctions are reversible and that we swiftly delist people from sanctions when the legal basis no longer applies." (https://www.youtube.com/watch?v=YFPie-d9_FY at 25:20 – 25:30). In the instant matter, the basis for Plaintiff's designation did not even exist at the time of his designation.

46.     State echoes this language on its own website, without providing any legal process for seeking reconsideration of a sanctions designation. ("The Office of Economic Sanctions Policy and Implementation … maintains and enforces sanctions to maximize their economic impact on our targets and minimize the damage to U.S. economic interests. We also work to remove economic sanctions when appropriate to reward and incentivize improved behavior or demonstrate U.S. support for newly established democratic governments[]" *available at* https://www.state.gov/economic-sanctions-policy-and-implementation/.)

47.     In this instance, Plaintiff cannot demonstrate "improved behavior" when the basis of his sanctions designation was no longer applicable 50 days prior to State's arbitrary decision to designate him. Indeed, Plaintiff has done everything that Defendants have requested, while Defendants unreasonably delay adjudication of the matter. There is no meaningful way for Plaintiff to challenge his designation pursuant to an administrative process that does not appear to follow the law or any articulable procedure in good faith. Thus, Plaintiff has no other recourse than to request that this Court right the many wrongs that Defendants have caused through their arbitrary action in conducting an impermissible *ad hoc* departure from lawful procedure—and

through their capricious inaction in failing to adjudicate Plaintiff's petition for removal from the SDN List.

## LEGAL CLAIMS

### COUNT I

DEFENDANTS ARE ADJUDICATING PLAINTIFF'S PETITION WITHOUT LAWFUL AUTHORITY AND AS AN IMPERMISSIBLE AD HOC DEPARTURE FROM LAWFUL PROCEDURE, CONSTITUTING AGENCY ACTION THAT IS ARBITRARY AND CAPRICIOUS AND RESULTING IN UNREASONABLE DELAY

48.     Plaintiff re-alleges and incorporates by reference as if fully set forth herein the allegations in all preceding paragraphs.

49.     The Administrative Procedure Act (APA) empowers a reviewing court to set aside agency action found to be, *inter alia*, arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, or in excess of statutory jurisdiction, authority, or limitations, or short of statutory right, or without observance of procedure required by law.  5 U.S.C. § 706(2).

50.     Under the APA, "agency action" includes, in relevant part, "an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or *failure to act*."  5 U.S.C. § 706(1) and 5 U.S.C. § 551(13) (emphasis added).

51.     By attempting to adjudicate this matter—and failing to act on it—Defendants are arbitrarily assuming and/or delegating authority that is exclusively granted to the U.S. Department of the Treasury.  As such, Defendants are undertaking an *ad hoc* departure from the procedure required by law.  Defendants' unlawful actions have resulted in the continued deprivation of Plaintiff's rights for this matter to be adjudicated with due process by a governmental agency that has the lawful authority and competency to render a timely decision.  Thus, Defendants are causing unreasonable delay in the fair and timely adjudication of this matter.

**COUNT II**

DEFENDANTS' FAILURE TO RENDER A DECISION WITH RESPECT TO PLAINTIFF'S
DELISTING PETITION DESPITE INDISPUTABLE EVIDENCE THAT PLAINTIFF DOES
NOT MEET THE LEGAL CRITERIA FOR DESIGNATION UNDER E.O. 14024
CONSTITUTES UNREASONABLE DELAY UNDER THE ADMINISTRATIVE
PROCEDURE ACT

52.     Plaintiff re-alleges and incorporates by reference as if fully set forth herein the allegations in all preceding paragraphs.

53.     The APA requires agencies to "conclude a matter presented to it…[w]ith due regard for the convenience and necessity of the parties or their representatives and within a reasonable time." 5 U.S.C. § 555(b).

54.     Under the APA, reviewing courts are required to compel agency actions unlawfully withheld or unreasonably delayed. 5 U.S.C. § 706(1).

55.     Under binding precedent in this Circuit, it is axiomatic that administrative agencies must treat similarly situated parties similarly or, in the alternative, provide a legitimate reason as to why they are treating them differently.  Plaintiff is similarly situated as three other petitioners who were designated for sanctions pursuant to E.O. 14024, petitioned for reconsideration of their designation pursuant to 31 C.F.R. § 501.807, and whose predicate bases for designation no longer applied.  Further, there was no predicate basis for Plaintiff's designation at the time of State's action.  Nevertheless, those other three parties' petitions were adjudicated in less time than Plaintiff's, resulting in an impermissible material difference in how Plaintiff's petition is being considered under the same regulatory process found at 31 C.F.R. § 501.807 when compared to similarly situated petitioners.  Defendants have failed to provide a legitimate reason for treating Plaintiff, a similarly situated party, in a different manner under the same administrative process.  Thus, Defendants are denying Plaintiff equal protection under the law.

56.     Defendants' failure to render a decision on Plaintiff's delisting petition, despite having indisputable evidence in their possession that Plaintiff did not and does not meet the legal criteria for designation under E.O. 14024 constitutes unreasonable delay under the APA.  Further, Defendants are treating Plaintiff differently than similarly situated parties by failing to adjudicate this matter in a timely manner.  Plaintiff will continue to suffer the consequences of his designation as long as Defendants persist in refusing to adjudicate Plaintiff's delisting petition and treating Plaintiff differently than similarly situated parties.

## COUNT III

### DEFENDANTS' FAILURE TO RENDER A DECISION WITH RESPECT TO PLAINTIFF'S DELISTING PETITION DESPITE INDISPUTABLE EVIDENCE THAT PLAINTIFF DOES NOT MEET THE LEGAL CRITERIA FOR CONTINUED DESIGNATION UNDER E.O. 14024 CONSTITUTES ARBITRARY AND CAPRICIOUS AGENCY ACTION UNDER THE ADMINISTRATIVE PROCEDURE ACT

57.     Plaintiff realleges and incorporates by reference as if fully set forth herein the allegations in all preceding paragraphs.

58.     Under the APA, agencies are required "to conclude a matter presented to it…[w]ith due regard for the convenience and necessity of the parties or their representatives and within a reasonable time." 5 U.S.C. § 555(b).

59.     Under the APA, "agency action" includes, in relevant part, "an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or *failure to act*." 5 U.S.C. § 706(1) (emphasis added). Courts are required to hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. 5 U.S.C. §706(2)(A).

60.     Defendants' failure to act on Plaintiff's delisting petition, despite having evidence in their possession that Plaintiff did not and does not meet the criteria for designation under E.O.

14024 constitutes agency action that is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law in violation of the APA.  Specifically, Defendants had—or could have reasonably obtained—information before Plaintiff's designation that invalidated the basis for his designation.  Further, Plaintiff has since presented information and documents to Defendants unequivocally demonstrating that he does not—and did not—meet the criteria for designation under E.O. 14024 at the time of his designation, and Defendants have failed to act on that information.

## RELIEF REQUESTED

Wherefore, Plaintiff respectfully requests that this Court:

A.   Set aside Defendants' actions as unlawful and declare and/or order Defendants' rescission of Plaintiff's designation under E.O. 14024 and removal of his name from OFAC's SDN List;

B.   Order Defendants to issue a written, reasoned decision on Plaintiff's pending delisting petition and provide a legitimate reason why his petition has been treated differently than similarly situated petitioners;

C.   Grant an award to Plaintiff of costs and attorneys' fees under the Equal Access to Justice Act, 28 U.S.C. § 2412 *et seq*., and any other applicable provision of law; and

D.   Such other and further relief as the Court may deem proper.

Dated: December 12, 2022

Respectfully submitted,

/s/ Michael Parker, Esq.
Michael Parker, Esq.
Ferrari & Associates, P.C.
655 15th St., NW
Suite 420
Washington, D.C. 20005
Telephone: (202) 280-6370
Fax: (877) 448-4885
Email: parker@falawpc.com
D.C. Bar No. 1685884

*Counsel for*
*Anatoly Karachinskiy*